UNITED STATES *v.* FIELD & Co. (No. 2873)[1]

[1] T. D. 42263.

United States Court of Customs Appeals, June 10, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.
*James W. Bevans* for appellee.

[Oral argument March 16, 1927, by Mr. Carter and Mr. Bevans]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

Two protests are involved in this case. It is agreed that the appraiser's reports, which are incorporated in the record, correctly describe the merchandise. As to protest 85809–G he reported:

The merchandise consists of curtains of net composed in chief value of yarn, threads, filaments, or beads. It is embroidered. It is also composed in part of lace, net, or one of the other materials named in the first division of paragraph 1430.

As to protest 91897–G his report was:

The merchandise consists of curtains composed of net, tamboured.

All the merchandise was classified and assessed at 90 per centum ad valorem by the collector under the first part of paragraph 1430 of the Tariff Act of 1922. Importer protested, claiming it to be dutiable under the second part thereof at 75 per centum ad valorem. The Customs Court sustained the protest. The Government appealed. Separating the provisions of the paragraph into (a) and (b) for our own convenience, we quote the applicable parts thereof:

(a) Laces, lace window curtains, burnt-out laces and embroideries capable of conversion into burnt-out laces, nets and nettings, embroidered or otherwise, veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, ornaments; * * * and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this act, * * *.

(b) Embroideries not specially provided for, and all fabrics and articles embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or tamboured, * * * all the foregoing, finished or unfinished, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this act, * * *.

We interpret the appraiser's report as to the merchandise covered by the first protest to mean that the *curtains* described therein were embroidered, and not that the component material was embroidered before the curtains were made therefrom. His report as to that covered by the second protest we construe likewise to mean that the

component material of the curtains was not tamboured before the curtains were made, but that the *curtains* were tamboured. There is no controversy about this, and it is also agreed that these curtains are made of nets or netting.

The case has been well presented on each side. When it was argued here counsel for the Government contended that the term "lace window curtains" in (a) included window curtains made of net or netting. Counsel for importer controverted this claim, but in the course of the argument asked, and was granted, leave to further consider it and file a supplemental brief. In that brief counsel says, speaking of that contention—

> In our brief we were inclined to the opinion that net was not lace and that therefore a curtain of net was not comprehended by the term "lace window curtains." In view of the Government's further citations * * * we are inclined to the opinion that the Government is probably correct and that the term "lace window curtains" would include window curtains made of net or netting—

and proceeded to discuss the case upon that basis.

We adopt, for the purposes of this case, this interpretation of the term "lace window curtains" in (a). The issue, therefore, as to the merchandise covered by protest 85809–G is: Which of the divisions of the paragraph, (a) or (b), more specifically describes lace window curtains, embroidered? The Government contends that (a) controls, pointing out that the term "lace window curtains" includes such curtains whether embroidered or not and that the provision for "all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles" explicitly includes the curtains covered by the first protest, because they are composed in part of nets or nettings.

But we think all questions as to the classification of the curtains covered by the first-mentioned protest were decided in favor of the importer in the case of *United States* v. *Smith & Co.*, 12 Ct. Cust. Appls. 384.

That case involved flouncings which are *eo nomine* provided for in (a). They were embroidered. We held that they should be classified under (b). Hatfield, J., for the court, discussing paragraph 1430, said:

> The first part of paragraph 1430, supra, provides for "embroideries capable of conversion into burnt-out laces" and such as may be described by some other name and included in the eo nomine mentioned articles, and "nets and nettings embroidered or otherwise." No other embroideries are provided for therein and no other enumerated fabric or article is modified by any such clause as that which modifies "nets and nettings," and while general provisions such as "all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles;" * * * and "by whatever name known and to whatever use applied," apply to each and all of the enumerated articles, Congress has with care limited the clause "embroidered or otherwise" to "nets and nettings,"

and provided only for such "embroideries" as are "capable of conversion into burnt-out laces." It seems to us that Congress clearly intended to exclude all other embroideries and embroidered articles from the provisions of the first part of the paragraph. *Expressio unius est exclusio alterius.*

The correctness of this conclusion seems to be verified by the provisions of the latter part of the paragraph for "embroideries not specially provided for, and for all fabrics and articles embroidered in any manner by hand or machinery * * * by whatever name known and to whatever use applied." * * *

In the first part of paragraph 1430, supra, there is a provision for "embroideries capable of conversion into burnt-out laces," and such as may be described by some other name and included in the eo nomine mentioned articles, dutiable at 90 per cent ad valorem. In the latter part of that paragraph there is a provision for "embroideries not specially provided for," at 75 per cent ad valorem.

In the first part of the paragraph there is a provision for "nets and nettings embroidered or otherwise," dutiable at 90 per cent ad valorem, and in the latter part of the paragraph a provision for, * * * " all fabrics and articles embroidered in any manner, * * * by whatever name known, and to whatever use applied," * * * at 75 per cent ad valorem.

Flouncings may or may not be embroidered. Embroidery is not an indispensable requisite or characteristic of a flouncing.

Flouncings are eo nomine provided for in the first part of the paragraph under consideration, but certainly embroideries in the form of flouncings are not therein provided for. Nor is there any provision for "flouncings, embroidered or otherwise." Accordingly "embroidered flouncings" or "embroideries in the form of flouncings" are excluded from the first part of paragraph 1430, supra.

If the term "lace window curtains" be substituted for "flouncings" in appropriate places in the foregoing quotation, the controlling effect of that case in favor of importer as to the curtains covered by protest 85809–G will clearly appear.

Again in *Pustet & Co.* v. *United States,* 13 Ct. Cust. Appls. 530, like issues were considered and the same conclusion reached. In that case embroidered "burses" made in part of trimmings, galloons, or braids, *eo nomine* provided for in (a), such materials not being embroidered, were before us for classification under paragraph 1430. Smith, J., expressing our views, said:

The first part of paragraph 1430 provides, among other things, for *embroideries capable of conversion into burnt-out laces and for nets and nettings embroidered.* Congress having expressly named the particular embroideries and embroidered fabrics upon which it intended to impose a duty of 90 per centum ad valorem, it must be assumed, under the rule of interpretation just cited and nothing to the contrary appearing, that it was not the legislative purpose to subject to the 90 per centum rate any embroideries or embroidered articles other than those actually specified either *eo nomine* or under designations which necessarily implied an embroidery or an embroidered fabric or article. *United States* v. *Smith & Co.,* 12 Ct. Cust. Appls. 384, 387, 388.

The Government also contends that the curtains covered by the first-mentioned protest are dutiable under (a) as nets embroidered. This claim can not be upheld, because they are not nets but curtains, embroidered.

In view of the foregoing authorities, we hold that protest 85809–G was well founded and should have been, as it was, sustained by the board.

We proceed to consider the classification of the curtains composed of net, tamboured, covered by protest 91987–G. Importer contends, and the Government admits, that tambouring is an ornamentation placed on a fabric by needlework and is therefore in one sense embroidery. Counsel for both sides cite *Lahey et al.* v. *United States*, 71 Fed. 870, in which the Circuit Court of Appeals of the Second Circuit had occasion in its opinion to discuss the meaning of tamboured as contrasted with embroidered in paragraph 373 of the tariff act of 1890. In the discussion of the issues there, and speaking of embroidering and tambouring, the court said: "An article which is tamboured is not, technically, embroidered." As the Government points out in its brief, Congress has for many years provided for articles embroidered and also for articles tamboured, evidently distinguishing between them. See act of 1883, Schedule J; act of 1890, paragraph 373; act of 1894, paragraph 276; act of 1897, paragraphs 312, 339, and 390; act of 1909, paragraphs 349 and 402; and act of 1913, paragraph 358. A like purpose is disclosed in paragraph 1430 now under consideration. In view of this specific congressional distinction between embroidered and tamboured, we do not feel authorized to say that Congress intended that a tamboured article should be considered as an embroidered article under paragraph 1430. There is therefore no room for the application of the rule of *expressio unius est exclusio alterius*, which in *United States* v. *Smith & Co.*, *supra*, we held required the exclusion of embroidered flouncings from the first part of the paragraph, because there is no specific reference whatever to tambouring or tamboured articles in the first part thereof.

Our opinion in the *Smith* case, *supra*, also contains the following:

But should there be any doubt about the construction thus placed upon the paragraph, and if the doctrine of "relative specificity" be applied to determine the dutiable status of the merchandise in question, it would seem to us that the provision in the latter part of the paragraph for "embroideries not specially provided for, and all fabrics and articles embroidered in any manner * * * by whatever name known, and to whatever use applied" * * * is more specific for merchandise described, as "embroideries in the form of flouncings, or embroidered flouncings," than the eo nomine provision for "flouncings, * * * and all fabrics and articles composed in any part, however small, or of any of the foregoing fabrics or articles; * * * by whatever name known and to whatever use applied."

It is urged by importer that the view expressed in this last quotation requires that these tamboured lace window curtains should be classified under (b). Such would be the result if that quotation be regarded as the law of the case because, as appears, (b) provides for articles and fabrics tamboured.

It is obvious, however, from the entire opinion in the *Smith* case, that the first quotation therefrom was clearly the basis of decision, and that the view expressed in the last quotation was suggested as confirmatory and in support of the conclusion already reached. It was, however, unnecessary and, therefore, in a sense, *obiter*. In any event it does not express our more mature views and, so far as applicable to an issue like the one now under consideration, will not be followed by this court.

Within the rule of said first quotation the term "lace window curtains" is an *eo nomine* provision and includes such curtains, whether they are tamboured or not. There is no reference in the first part of the paragraph to tamboured articles, as there is to those that are embroidered and, therefore, no room for the application of the rule of expressio unius est exclusio alterius. These tamboured lace curtains are, therefore, by force of the *eo nomine* rule classifiable under the first part of paragraph 1430, and the judgment below as to them can not be upheld.

By naming lace window curtains in the first part of the paragraph and omitting to use any language indicating that the *eo nomine* rule was not applicable, Congress indicated an intent that such curtains should pay the higher rate provided in the paragraph. It could hardly have meant that such curtains, if tamboured, should pay a less rate *because* they were tamboured. By classifying them under (a) a result is reached which is in accord with the established policy of tariff legislation that, generally speaking, the more elaborate, advanced, and expensive articles of the same class are subjected to a higher rate of duty if two different rates are provided therefor. A similar intent is manifested in paragraph 1460 of the act which provides that if two or more rates of duty are applicable to an imported article, the higher rate shall prevail. So in this case, if these tamboured lace window curtains were described with equal specificity in (a) and (b) the higher rate would govern.

We think these lace window curtains tamboured are *eo nomine* provided for in (a) and the judgment below as to them must be reversed.

Paragraph 1430 is exceedingly difficult of comprehension and application. We have tried to apply such rules of interpretation thereto as seem pertinent with the purpose of giving force, so far as may be, to such congressional intent as can be discovered therein, in view of its seemingly inconsistent and conflicting provisions. It clearly merits legislative clarification.

It follows from what has already been said that as to the merchandise covered by protest 85809–G the judgment below is *affirmed*, and as to that covered by 91987–G it is *reversed*.

Smith, J., dissents as to the conclusion in 91987–G and concurs in the conclusion in 85809–G.