MADAME ADELE *v.* UNITED STATES (No. 3905)[1]

[1] T. D. 48176.

United States Court of Customs and Patent Appeals, February 17, 1936

*Lawrence A. Harper* (*Abraham Gottfried* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel) for the United States.

[Oral argument February 6, 1936 by Mr. Gottfried and Mr. Donohue]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant's appeal here challenges the judgment of the United States Customs Court, Second Division, which held that certain "body supporting garments known as corsets, trimmed with lace and net", the chief value of the articles being represented by the corsets which are composed in whole or in part of elastic fabric, were dutiable under paragraph 1529 (a), Tariff Act of 1930, at 90 per centum ad valorem, the judgment approving the classification of the collector.

Appellant claimed in her protest that the merchandise, being composed in part of elastic fabrics, was dutiable as corsets under subparagraph (c) of said paragraph 1529, at 75 per centum ad valorem, and alternatively claimed that the corsets, exclusive of the lace and net trimming, were dutiable at 75 per centum ad valorem under said subparagraph (c) of said paragraph 1529, and that the lace and net trimmings were separately dutiable at 90 per centum ad valorem under subparagraph (a) of said paragraph 1529. Paragraph 1529, including each of the three subdivisions thereof, follows:

PAR. 1529 (a). *Laces,* lace fabrics, *and lace articles,* made by hand or on a lace, net, knitting, or braiding machine, and all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; lace window curtains, veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings,

insertings, galloons, edgings, trimmings, fringes, gimps, and ornaments; braids, loom woven and ornamented in the process of weaving, or made by hand, or on a lace, knitting, or braiding machine; and fabrics and articles embroidered (whether or not the embroidery is on a scalloped edge), tamboured, appliquéd, ornamented with beads, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including one row of straight hemstitching adjoining the hem; *all the foregoing, and fabrics and articles wholly or in part thereof,* finished or unfinished (except materials and articles provided for in paragraphs 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph), *by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act,* when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem. Hose and half-hose wholly or in chief value of cotton or of wool shall not be dutiable at the above rate by reason of being embroidered, if the embroidery is such as is commonly known as clocking and does not exceed one inch in width or six inches in length, exclusive of the fork, but shall be subject to a duty of 75 per centum ad valorem.

(b) *Handkerchiefs, wholly or in part of lace,* and handkerchiefs embroidered (whether with a plain or fancy initial, monogram, or otherwise, and whether or not the embroidery is on a scalloped edge), tamboured, appliquéd, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including one row of straight hemstitching adjoining the hem; all the foregoing, finished or unfinished, of whatever material composed, valued at not more than 70 cents per dozen, 3 cents each and 40 per centum ad valorem; valued at more than 70 cents per dozen, 4 cents each, and 40 per centum ad valorem: *Provided,* That any of the foregoing valued at not more than 70 cents per dozen, if made with hand rolled or hand made hems, shall be subject to an additional duty of 1 cent each.

(c) *Corsets,* girdle-corsets, step-in-corsets, brassieres, bandeaux-brassieres; corsets, girdle-corsets, or step-in-corsets, attached to brassieres or bandeaux-brassieres; all similar body-supporting garments; *all the foregoing, of whatever material composed,* finished or unfinished, and all wearing apparel or articles to which any of the foregoing is attached, 60 per centum ad valorem; all the foregoing *composed in whole or in part of elastic fabric,* 75 per centum ad valorem. No wearing apparel or article so attached to such body supporting garment shall be subject to a less rate of duty than if imported separately. Elastic fabrics of whatever material composed, knit, woven, or braided, in part of india rubber, 60 per centum ad valorem. (Italics (except *"Provided"*) ours.)

The trial court, in an opinion by Tilson, Judge, on April 22, 1935, stated that the issues involved in the instant case were practically identical with the issues involved in the case of *Bullocks* v. *United States,* Abstract 28171, 65 Treas. Dec. 1556, except that an additional contention was made in this case to the effect that the corsets were segregable for duty purposes. In the decision of the trial court in the instant case, it overruled appellant's contentions as to segregability on the authority of *Altman & Co.* v. *United States,* 13 Ct. Cust. Appls. 315, T. D. 41232, and relying upon the decision in the *Bullocks* case, *supra,* overruled the protest.

In paragraph 1529, subparagraph (c), Congress made provision for "corsets * * * of whatever material composed", and in the

same paragraph, but in subparagraph (a) thereof, provided for "articles wholly or in part thereof [lace] * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act." Appellant's chief contention is to the effect that in order to determine what Congress meant by the enactment, in the same paragraph, of the two provisions covering the merchandise at bar, it is necessary to consider the history of the legislation, and that when considered it becomes clear that Congress intended that corsets, such as those at bar, trimmed with lace or net, should find classification under said subparagraph (c) as corsets at 75 per centum ad valorem. The second contention of appellant is that if the plain language of the respective enactments under consideration is considered, without respect to legislative history, the literal reading of the same makes it mandatory on the Collector of Customs to segregate the lace or net from the corsets and to assess duty in accordance with her protest claims.

We think it is necessary to consider only three of the assignments of error relied upon by appellant: Number 3, which challenges the correctness of the judgment of the trial court in sustaining the collector's classification of the merchandise; number 4 relating to the alternative claim that the merchandise was segregable; and number 5, directed against the refusal of the trial court to consider the legislative history of paragraph 1529 in order to ascertain the legislative intent.

We are in hearty agreement with that portion of the decision in the *Bullocks* case which relates to the issues raised by assignments of error 3 and 4. The opinion suggests that careful consideration was given to the issues presented and that apt language was used in making application of the principles of law involved. It will only be necessary for us to add a few additional reasons not found in the opinion in the *Bullocks* case, which, together with those assigned by the trial court, prompt us to the conclusion that the trial court's judgment should, in the instant case, be affirmed.

We are not in agreement with the trial court's decision in the *Bullocks* case, which was rendered June 4, 1934, relating to the subject matter of appellant's fifth assignment of error as to the right of the trial court to consult the legislative history of the enactment in controversy in order to arrive at the legislative intent.

On April 12, 1933, this court handed down its decision in the case of *United States* v. *E. DeGrandmont, Inc.*, 21 C. C. P. A. (Customs) 17, T. D. 46345, in which it had under consideration a decision and judgment of the same division of the trial court which decided the instant case. In that decision we felt that the question of the right of the trial court to consult legislative history was of such importance.

as to require going into the question in considerable detail, and we there discussed at great length what this and other courts had said upon the subject. In respect to this issue the question there is quite similar to the question here. There the trial court had refused to consult the legislative history and we held that:

Being in doubt as to the intended scope of the two provisions under consideration and not being able satisfactorily to arrive at the intent of the legislature when confined to a consideration of the context of the provisions, we will now consider the legislative history of the same.

It is our view that as the issues were presented to the trial court in this case, it would have been fully justified in consulting the legislative history of the statutory provisions involved, and it is clear to us that if a consideration of such legislative history would have brought about a different result from that arrived at, harmful error would have been committed in a refusal to consider such subject matter. We think the trial court arrived at the right result and that a consideration of the legislative history by it would not have justified a conclusion different from that arrived at. In this view it is obvious that the erroneous position taken was harmless. If by reason of ambiguity such doubt existed as to the congressional intent in the enactment of the competing provisions involved in the case of *United States* v. *E. DeGrandmont, Inc.*, *supra*, as to justify a resort to a consideration of legislative history in order to ascertain the legislative intent, unquestionably the more involved and complex provisions at bar would fully justify the same privilege.

We have examined carefully the legislative history relied upon by both parties in this case and find nothing contained therein which would warrant the conclusion that the collector's classification was erroneous or that the trial court erred in overruling the protest. Paragraph 1430, Tariff Act of 1922, is the predecessor of paragraph 1529, Tariff Act of 1930. Paragraph 1529 of the new act differs in several far-reaching respects from paragraph 1430 of the old act. Lace or net trimmed corsets were dutiable at 90 per centum under paragraph 1430 of the Tariff Act of 1922. It is conceded in this case that Congress, in preparing the Tariff Act of 1930, intended to gather into and provide for, in said paragraph 1529, certain corsets and body supporting garments which had been theretofore dutiable as articles or manufactures in accordance with the component material of chief value, that is to say, corsets which had been classified under the Tariff Act of 1922 under either the silk, rayon, woolen, cotton, or other material schedules or provisions, depending upon their chief component, would, in the new act, be dutiable under paragraph 1529. It was the intent to invade all such paragraphs and bring corsets and other body supporting garments into a paragraph

where a more uniform rate of duty could be applied thereto. This concession is abundantly supported by the context of the pertinent provisions of the Tariff Act of 1930 and numerous other considerations not necessary to repeat here. See paragraphs 917, 919, 1017, 1208, 1210, 1213, and 1430, all of the Tariff Act of 1922. In this respect the parties hereto are not in disagreement. The disagreement begins when called upon to determine which of the two competing subparagraphs of said paragraph 1529 was intended to include the particular kind of corset here involved, to wit, those trimmed with lace or net.

While appellant stresses her contention that the plain language of subparagraph (c) indicates that Congress intended to include therein *all corsets*, notwithstanding the fact that they were in part of lace or net or of any of the other articles provided for in subparagraph (a) of said paragraph 1529, nothing has been called to our attention which we think warrants such a conclusion.

We do not think Congress intended that corsets composed in part of lace or net should find classification under said subparagraph (c), but that it intended that they should be classified at a higher rate of duty as articles in part of lace and net in subparagraph (a) of said paragraph 1529. In subparagraph (a), Congress very carefully indicated those parts of the tariff act it did not intend to invade by the very inclusive language in subparagraph (a). It excepted from its invading powers articles which were provided for in—

paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), *or in subparagraph (b) of this paragraph.* (Italics ours.)

Not only did it make exception of the free list and other paragraphs, but it made an exception as to *subparagraph (b) of paragraph 1529*, which paragraph we now have under consideration. If Congress had intended to make exception of subparagraph (c) it seems clear to us that it would have enumerated it in the list of exceptions. See *Glemby's Sons Co. (Inc.) v. United States*, 15 Ct. Cust. Appls. 420, T. D. 42591. Obviously it did not want the 90 per centum ad valorem provision of paragraph 1529 (a) to invade completely the hose provisions of the act and so by special provision in paragraph 1529 (a), it gave to hose of certain kinds special treatment. In subparagraph (b) it made specific provision for certain kinds of handkerchiefs which would have otherwise found classification under said subparagraph (a). If Congress had intended that corsets of the kind at bar should not find classification under said subparagraph (a) it seems obvious, in view of the foregoing, that it would have inserted in subparagraph (c) or in subparagraph (a) appropriate language to have brought about such a result. Not only did it fail to employ any language justifying a conclusion that it so intended but it reenacted

the old provision found in the predecessor paragraph 1430, Tariff Act of 1922, to wit:

by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments [etc.].

It is conceded in this case that the composition of the merchandise at bar responds to the last above-quoted phrase.

In the correctness of our conclusion above stated, we are supported and reassured by a consideration of the action taken by Congress after the bill passed the House and Senate. In Supplement to Tariff Information, prepared by the United States Tariff Commission for the information of the interested House and Senate committees in reference to a consideration of the bill which was then subject to conference, having passed both houses, it was stated that corsets and the other articles provided for in paragraph 1529, if trimmed with lace, and which were formerly dutiable under paragraph 1430, Tariff Act of 1922, would be dutiable under paragraph 1529 (a) of the Tariff Act of 1930 at 90 per centum ad valorem. See page 514, Reports of United States Tariff Commission, Vol. 29. On the same page is found the following:

Another change made by the Finance Committee does not appear in the Senate amendments because of the relettering of subparagraphs of paragraph 1529. By striking out (c) in the House bill as an exception to (a), the Finance Committee made the rate of 90 per cent in (a) applicable to embroidered or lace-trimmed body-supporting garments.

Thereafter, the bill in the identical form in which it passed the Senate, in respects with which we are here concerned, became the Tariff Act of 1930, a portion of which act we now are considering.

In *Kayser & Co., Inc., et al.* v. *United States*, 13 Ct. Cust. Appls. 474, T. D. 41367, we held that paragraph 1430 of the Tariff Act of 1922 which contained the term, "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act", invaded every paragraph (except those therein excepted) of the Tariff Act of 1922. We there said:

The embroidery provision of paragraph 1430 is so sweeping, clear, and definite as to the goods subjected to its operation that there is no room for interpretation and no doubt left as to the goods which Congress meant to include. That provision subjects to its operation not only fabrics and articles embroidered in any manner, as did the tariff acts of 1897, 1909, and 1913, but prescribed that the duty therein specified shall be imposed on all embroidered fabrics and articles, finished or unfinished, *by whatever name known and to whatever use applied, and whether or not named, described, or provided for elsewhere in the act.* Every paragraph of the Tariff Act of 1922 must yield to that language, and that means that a duty of 75 per centum ad valorem must be levied on every embroidered commodity. composed of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose.

See also *United States* v. *Field & Co.*, 15 Ct. Cust. Appls. 254, T. D. 42263; *Pustet & Co.* v. *United States*, 13 Ct. Cust. Appls. 530, T. D. 41396; *United States* v. *Goldfrank & Co.*, 16 Ct. Cust. Appls. 340, T. D. 43081; and *United States* v. *F. A. Ramig Co.*, 17 C. C. P. A. (Customs) 365, T. D. 43809. These cases followed, where applicable, our holding in the first case involving this subject matter, *United States* v. *Smith & Co.*, 12 Ct. Cust. Appls. 384, T. D. 40544.

The case of *Smith & Co.* v. *United States*, 5 Ct. Cust. Appls. 40, T. D. 34008, was, in the case at bar, cited by the Government. In that case it was held that the term "fish * * * by whatever name known" included "herrings within its terms just as definitely and absolutely as if the word had been employed one or more times * * *." That case was cited by this court in the case of *United States* v. *Smith & Co.*, supra. See also *Mason* v. *Robertson*, 139 U. S. 624, 627.

In view of the uniformity of the holdings of this and other courts as to the scope and effect to be given to the terms "by whatever name known" and "whether or not named, described, or provided for elsewhere in this act", we think it unnecessary to discuss further here the settled proposition that the language under consideration, found in subparagraph (a) of paragraph 1529 brings within the purview of said subparagraph corsets which otherwise might find classification under subparagraph (c). To hold with appellant in her contention that since Congress made *eo nomine* provision for corsets in subparagraph (c), it necessarily follows that we are required to hold that all corsets should be there classified, would be to hold contrary to what we regard as settled law.

That Congress by the reenactment in paragraph 1529 (a) of all the language here under consideration, in respects pertinent to the issue, which was found in the predecessor paragraph 1430, Tariff Act of 1922, gave legislative approval to this court's uniform holdings on the subject cannot be seriously questioned.

As to the alternative claim of appellant that the components of the corsets should be separated for duty purposes in accordance with her protest, we think the answer of the trial court completely settles this question. In *Altman & Co.* v. *United States*, supra, relied upon by the trial court, this court held that corsets and lace trimmings for the same, packed in the same cases, should be regarded as entireties and dutiable as such under paragraph 1430, Tariff Act of 1922. If we were correct in that case, it can hardly be questioned that the merchandise at bar, which consists of corsets with lace or net trimmings attached thereto, should likewise find classification as entireties.

The judgment of the United States Customs Court is *affirmed*.