(C. D. 1114)

JOHN HEATHCOAT & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 10, 1948)

*John D. Rode* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh* and *Arthur R. Martoccia,* special attorneys), for the defendant.

Before LAWRENCE and TILSON, Judges

TILSON, Judge: This is a suit against the United States seeking to recover a certain sum of money alleged to have been illegally exacted as customs duties upon an importation of merchandise. It was classified as cotton quillings and duty levied thereon at the rate of 90 per centum ad valorem under the *eo nomine* provision for quillings in paragraph 1529 (a) of the Tariff Act of 1930. Plaintiff claims the merchandise to be properly dutiable at only 50 per centum ad valorem under said paragraph 1529 and T. D. 48316, or at 45 per centum ad

valorem under said paragraph 1529 and T. D. 49753, or at 60 per centum ad valorem as laces, lace fabrics, or lace articles (Levers or go-through) under said paragraph 1529 and T. D. 48316.

Treasury Decision 48316 covers the trade agreement with France, dated June 15, 1936, and reduces the duty from 90 per centum to 50 per centum on "Laces, lace fabrics, and lace articles, made on the bobbinet-Jacquard machine, whether or not embroidered, and however described and provided for in paragraph 1529 (a)." This same trade agreement reduces the duty from 90 per centum to 60 per centum on "Laces, lace fabrics, and lace articles, made with independent beams on the Levers or go-through lace machine of 12 point or finer, (full gauge), wholly or in chief value of cotton, whether or not embroidered, and however described and provided for in paragraph 1529 (a)." Treasury Decision 49753 covers the trade agreement with the United Kingdom, and reduces the duty from 90 per centum to 45 per centum on "Nets and nettings made on the bobbinet machine, not embroidered: Wholly or in chief value of cotton and having two hundred and twenty-five or more holes per square inch."

The merchandise is invoiced as plain net quillings, and counsel for the respective parties agreed that it was made on a bobbinet machine. After some testimony had been adduced to the effect that the merchandise was known as footings, counsel for the plaintiff conceded for the purposes of this case that quillings and footings are synonymous. A representative sample of the merchandise was admitted in evidence and marked "Collective Illustrative Exhibit A," and it was then testified that as imported the merchandise varied in lengths between five and six dozen yards and in widths from three-fourths of an inch to 3 inches.

The witness also agreed with the following definition or statement from the Summary of Tariff Information, 1929, page 2026:

Netting is plain unfigured network made by intertwisting threads to form open meshes, hexagonal in shape and uniform in size throughout the piece. Netting for dress and household use is made on the bobbinet machine. Net, sometimes used as a synonym for netting, is, correctly, a particular length of netting.

It appears that the imported merchandise is used for trimmings, in ladies' neckwear, for underwear, for handkerchiefs, in finishing off sleeves, on blouses or yokes, and generally for trimming women's wearing apparel; that as imported, this merchandise is not dedicated to any one use, but is used for the various things just mentioned. The witness also stated that the merchandise is known as "wash blondes," and that quillings might be anything that is of light weight, whatever construction, such as ribbon, marquisette, a narrow border of lace, net, or ribbon, pleated or fluted so as to resemble a row of quills, a variety of rufflings. On cross-examination the witness stated that it was the fast edge that converted the net into a footing or

quilling. This last statement of the witness was corroborated by one or more of the witnesses who testified for the defendant. It was also testified that if the imported merchandise did not have fast edges it would be known as nets.

The defendant offered the testimony of four witnesses and also three catalogs and one sample card, the same being published and produced by the plaintiff herein. It is not considered necessary to give a detailed statement of the testimony of the witnesses for the defendant, because to a great extent it is corroborative of the testimony of plaintiff's witness. There does not appear to be any serious disagreement between counsel for the respective parties regarding the pertinent facts in this case.

The record shows that the merchandise contains 529 holes per square inch. It should be remembered, however, that this merchandise was classified by the collector as quillings. While it is true that plaintiff's witness testified that the merchandise was known in the trade, and that it was sold, as "footings" and also as "wash blondes," in view of the language of said paragraph 1529 (a), that fact is not material so long as the merchandise is in fact quillings.

Paragraph 1529 (a), so far as here pertinent, reads as follows;

* * * all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; * * * quillings, * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished, * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, * * *.

In the case of *Kotzin Bros.* v. *United States*, 14 Ct. Cust. Appls. 99, regarding the phrase "by whatever name known" our appellate court said:

We are of opinion that by the use of the language "by whatever name known" in paragraph 358, *supra*, the Congress intended, for the purposes of that paragraph to prevent the application of the rule of commercial designation. It was plainly intended, we think, by the phrase "by whatever name known" to include within the paragraph all embroidered articles commonly or commercially so known, except such as were more specifically provided for. *Newman* v. *Arthur*, 109 U. S. 132–138; *Habicht, Braun & Co. et al.* v. *United States*, 2 Ct. Cust. Appls. 457, T. D. 32206; *Koch & Co.* v. *United States*, 6 Ct. Cust. Appls. 534, T. D. 36148.

In *Madame Adele* v. *United States*, 23 C. C. P. A. 305, in construing the language of paragraph 1529 (a), now under consideration, our appellate court said:

We do not think Congress intended that corsets composed in part of lace or net should find classification under said subparagraph (c), but that it intended that they should be classified at a higher rate of duty as articles in part of lace and net in subparagraph (a) of said paragraph 1529. In subparagraph (a), Congress very carefully indicated those parts of the tariff act it did not intend to invade by the very inclusive language in subparagraph (a). It excepted from its invading powers articles which were provided for in—

paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), *or in subparagraph (b) of this paragraph.* [Italics ours.]

Not only did it make exception of the free list and other paragraphs, but it made an exception as to *subparagraph (b) of paragraph 1529,* which paragraph we now have under consideration. If Congress had intended to make exception of subparagraph (c) it seems clear to us that it would have enumerated it in the list of exceptions. See *Glemby's Sons Co. (Inc.)* v. *United States,* 15 Ct. Cust. Appls. 420, T. D. 42591. Obviously it did not want the 90 per centum ad valorem provision of paragraph 1529 (a) to invade completely the hose provisions of the act and so by special provision in paragraph 1529 (a), it gave to hose of certain kinds special treatment. In subparagraph (b) it made specific provision for certain kinds of handkerchiefs which would have otherwise found classification under said subparagraph (a). If Congress had intended that corsets of the kind at bar should not find classification under said subparagraph (a) it seems obvious, in view of the foregoing, that it would have inserted in subparagraph (c) or in subparagraph (a) appropriate language to have brought about such a result. Not only did it fail to employ any language justifying a conclusion that it so intended but it reenacted the old provision found in the predecessor paragraph 1430, Tariff Act of 1922, to wit:

by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments [etc.].

Again, in *Kayser* v. *United States,* 13 Ct. Cust. Appls. 474, in construing the language here under consideration, our appellate court said:

The embroidery provision of paragraph 1430 is so sweeping, clear, and definite as to the goods subjected to its operation that there is no room for interpretation and no doubt left as to the goods which Congress meant to include. That provision subjects to its operation not only fabrics and articles embroidered in any manner, as did the tariff acts of 1897, 1909, and 1913, but prescribes that the duty therein specified shall be imposed on all embroidered fabrics and articles, finished or unfinished, *by whatever name known and to whatever use applied, and whether or not named, described, or provided for elsewhere in the act.* Every paragraph of the Tariff Act of 1922 must yield to that language, and that means that a duty of 75 per centum ad valorem must be levied on every embroidered commodity composed of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose.

See also *United States* v. *Field & Co.,* 15 Ct. Cust. Appls. 254, T. D. 42263; *Pustet & Co.* v. *United States,* 13 Ct. Cust. Appls. 530, T. D. 41396; *United States* v. *Goldfrank & Co.,* 16 Ct. Cust. Appls. 340, T. D. 43081; and *United States* v. *F. A. Ramig Co.,* 17 C. C. P. A. (Customs) 365, T. D. 43809. These cases followed, where applicable, the holding of our appellate court in the first case involving this subject matter, *United States* v. *Smith & Co.,* 12 Ct. Cust. Appls. 384, T. D. 40544.

On the same subject, the following is quoted from *United States* v. *C. I. Penn,* 27 C. C. P. A. 242:

We had occasion to construe the provision "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act" in the case of *Blumenthal & Co.* v. *United States,* 14 Ct. Cust.

Appls. 17, T. D. 41531, wherein we said, referring to paragraph 1430 of the Tariff Act of 1922:

*  *  * That paragraph provides that trimmings and ornaments *by whatever name known and to whatever use applied whether or not named, described or provided for elsewhere in the act, shall be subjected to a duty of 90 per centum ad valorem.* Bv that language Congress left no doubt as to its intention, and consequently, rules of construction or interpretation cannot be invoked to give to the statute a meaning other than that which its terms clearly and plainly import.

We have many times since that decision affirmed the holding above quoted.

Finally, in *United States* v. *Shalom*, 33 C. C. P. A. 29, our appellate court said:

In view of the fact that the Congress has provided in paragraph 1529 (a), *supra*, that articles in part of lace "by whatever name known" shall be dutiable thereunder, and as we hold on the record presented that the involved articles are in part of lace, it is immaterial by what name they are bought and sold and designated in the trade and commerce of the United States. See *Kotzin Bros.* v. *United States*, 14 Ct. Cust. Appls. 99, 104, T. D. 41589.

When the above-quoted authorities are applied to the facts in this case, the conclusion is inescapable that the involved quillings must find classification under paragraph 1529 (a), as classified by the collector, rather than under any of the provisions of the trade agreements hereinbefore set out.

For the reasons stated, and following the cited authorities, all claims of the plaintiff are overruled. Judgment will be rendered accordingly.