KAYSER & CO. (INC.) *v.* UNITED STATES (No. 2549)[1]

1. CONSTRUCTION, PARAGRAPH 1430, TARIFF ACT OF 1922—EMBROIDERIES— EMBROIDERED COTTON GLOVES.

The provision of paragraph 1430, Tariff Act of 1922, for "all fabrics and articles embroidered in any manner by hand or machinery, * * * finished or unfinished, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments," takes such merchandise out of any other provision in the act, and embroidered cotton gloves are classifiable under it rather than as gloves of cotton, under paragraph 915. Ornamental raised stitching on the back of a glove is embroidery, even though the stitching may also serve to shape and strengthen it. A glove with embroidery on it is an embroidered glove, whether the embroidery was done before or after the glove was made. Gloves made of a fabric are necessarily made of the yarns, threads, or filaments of which the fabric is composed, and are within the provision of paragraph 1430 for articles made of such. To hold otherwise would be to render the paragraph inoperative as to all finished textile embroidered articles.

2. ESTABLISHED PRACTICE.

The fact that cotton gloves were classified as cotton wearing apparel under the tariff act of 1897 and *eo nomine* under the acts of 1909 and 1913, instead of as embroidered articles, does not establish an administrative practice to prevent their classification as embroidered articles under paragraph 1430 of the act of 1922. Especially is this true in view of the fact that the provision for embroidered articles in the act of 1922 is so framed as to invade all other provisions of the act, while those of the other acts were not.

United States Court of Customs Appeals, February 2, 1926

APPEAL from Board of United States General Appraisers, G. A. 8925 (T. D. 40638)

[Affirmed.]

*John R. Rafter* for appellant.

*William W. Hoppin,* Assistant Attorney General (*Oscar Igstaedter,* special attorney, of counsel), for the United States.

*Thomas J. Doherty* (*De Vries, Doherty, Davis & Lamb* of counsel) *amicus curiæ.*

---

[1] T. D. 41367.

[Oral argument October 13, 1925, by Mr. Rafter, Mr. Igstaedter, and Mr. Doherty]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Sueded warp-knit cotton fabric gloves, imported at the port of New York, were classified by the collector of customs as embroidered articles and assessed for duty at 75 per centum ad valorem under that part of paragraph 1430 of the Tariff Act of 1922 which reads as follows:

PAR. 1430. * * * embroideries not specially provided for, and all fabrics and articles embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, * * * all the foregoing, finished or unfinished, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this act, when composed wholly or in chief value of yarns, threads, filaments, * * * 75 per centum ad valorem.

The importer claimed that the merchandise was dutiable as gloves at the appropriate rate per dozen pairs, under that part of paragraph 915 of the act of 1922 which reads as follows:

PAR. 915. Gloves composed wholly or in chief value of cotton or other vegetable fiber, made of fabric knit on a warp-knitting machine, if single fold of such fabric, when unshrunk and not sueded, and having less than 40 rows of loops per inch in width on the face of the glove, 50 per centum ad valorem; when shrunk or sueded or having 40 or more rows of loops per inch in width on the face of the glove, and not over 11 inches in length, $2.40 per dozen pairs, and for each additional inch length, in excess of 11 inches, 10 cents per dozen pairs; if two or more folds of fabric, any fold of which is made on a warp-knitting machine, and not over 11 inches in length, $3 per dozen pairs, and for each additional inch in excess of 11 inches, 10 cents per dozen pairs, but in no case shall any of the foregoing duties be less than 40 nor more than 75 per centum ad valorem.

The Board of General Appraisers overruled the protest and the importer appealed.

The merchandise involved in the appeal is represented by samples introduced in evidence at the hearing before the board and marked as Exhibits 1, 2, 3, 4, 5, 6, 7, 8, and 9. On the back of each sample are three groups of thread effects in relief, each group being composed of from four to six lines of stitching. In addition to the stitching on the back, Exhibits 8 and 9 have a stitched design on the wristlet or gauntlet. None of the gloves have on the back any raised effects produced by creasing or crimping the fabric.

The exhibits and the testimony in the case establish, first, that the raised effects and the stitching on the backs of the gloves are of an ornamental character; second, that many buyers of gloves regard such raised effects as embroidery and in their orders designate gloves so stitched as embroidered gloves. The attorney for the appellant admits in his brief that the raised effects on all of the exhibits are deco-

rative, but insists that there is a distinction between stitching that is decorative and stitching that is ornamental. He claims that although the stitching on the backs of the gloves is decorative, such stitching is necessary to complete the glove, and that therefore the gloves having such stitching only are not ornamented or embroidered. He concedes that the stitching on the wristlets of Exhibits 8 and 9 is ornamental and that said exhibits by reason of that stitching are embroidered gloves.

The only difference between the stitching on the gauntlets or wristlets of Exhibits 8 and 9 and that on the back of the other exhibits, is that the stitching on the gauntlets or wristlets produces wavy lines and a more elaborate design, while the stitching on the backs is in straight lines and effectuates a simpler decorative result.

The words "decorate" and "ornament" have substantially the same meaning. See "decorate," "ornament," "deck," "bedeck," and "adorn"—New Standard Dictionary. There is, therefore, no force in the contention that a glove may be decorated and not ornamented.

One of the most effective methods used for the decoration or ornamentation of fabrics is embroidery; that is to say, the imposition on a completed textile of needlework figures, designs, or patterns made by hand or machine and composed of threads, yarns, or filaments. See "embroidered" and "embroidery"—New Standard Dictionary; New International Encyclopedia; Sloane v. United States, 7 Ct. Cust. Appls. 463.

The points on the backs of all of the exhibits and the forms or figures on the wristlets of Exhibits 8 and 9 are made up of threads put in place by the needle and are unquestionably decorative and ornamental needlework designs. The points, forms, and figures are therefore embroidery and the gloves bearing them are embroidered gloves. Counsel for the appellant argues, however, that the gloves are not embroidered for the reason that no gloves are made without decorative stitching on the back and for the further reason that points are necessary for the proper completion of fabric gloves.

We do not think that that position is tenable inasmuch as there are illustrative exhibits in evidence which have no raised thread effects on the back. It is apparent from an examination of these exhibits that by creasing or crimping the fabric and by stitching on each side of the points thus produced, gloves may be shaped, made and held to their form without embroidering points on the backs. True enough points made by creasing the fabric are not so pleasing as raised effects made of threads, but the crimped or creased points accomplish the *utilitarian* purpose desired just as effectively as ornamental or decorative needlework. As properly shaped and fitting gloves may be completed without using embroidered points, it follows

that such embroidery work is not indispensable for the making of finished gloves.

Some of the witnesses for the importer testified that gloves having ornamental needlework points were not regarded by the trade as embroidered gloves. There were other witnesses, however, who testified that such gloves were sometimes ordered by customers as embroidered gloves and that their preference for one kind of embroidery point, rather than another, was now and then called to the attention of the factory. It can hardly be said therefore that the trade definitely, uniformly, and generally considered as unembroidered, gloves having ornamental raised thread effects on the back. But if the witnesses for the importer had been in accord, we could hardly accept such testimony as determinative of the meaning of the words "embroidery" and "embroidered." If in the trade the meaning of those words differed from their ordinary meaning, it was incumbent upon the importer to prove their trade meaning and that proof was neither offered nor made.

Testimony that gloves are ordered as bordir points, Paris points, Koehler points or as Brosser points, and not as embroidered gloves, does not prove that such gloves are not embroidered, and much less does it prove that such articles are not embroidered gloves as that designation is understood by the trade. For all that we know in this case, bordir, Paris, Koehler, and Brosser points may be particular kinds of embroidered points in which event it would be wholly unnecessary for the trade to use the term embroidered. From the failure to use the word embroidered no conclusion as to a trade meaning of embroidered different from the ordinary meaning can be drawn.

Some of the witnesses did say that gloves like the exhibits were not regarded by the trade as embroidered gloves, but that statement was nothing more than the statement of a conclusion and was valueless without the facts from which it was deduced. The conclusion of those witnesses may have been based on the fact that in buying and selling gloves the names of the points were used and not the words "embroidery" or "embroidered" which would not indicate the particular kind of embroidery required. Testimony that gloves were bought and sold, not as embroidered gloves, but as bordir points, Paris points, Koehler or silk points, or as Brosser points, would be incomplete in the absence of a showing that such points were not in fact embroidered and that showing could not be made without establishing the meaning of "embroidered" or "embroidery" in the trade.

From the fact that the points were placed upon the material after the fabric was cut into tranks, and before the tranks were fashioned into gloves, it is contended that the embroidery was not put upon the gloves, but upon the fabric, and that therefore the completed articles were not embroidered gloves. That argument is sophistical

and has no sound reason to support it. The work on the points was embroidery, when it was placed on the tranks, and it was no less embroidery after the tranks were converted into gloves. It is wholly immaterial whether embroidery is placed on an article before or after it is completed for the purpose of determining whether or not the article is "embroidered." It may be that an embroidered trank is not an embroidered glove, but it is certain that if the trank be converted into a glove, the embroidery on the back makes it an "embroidered glove."

Importer asserts that the yarns, threads, and filaments used to manufacture the fabric lost their identity after the weaving process was complete, and that as the gloves are in chief value of *cotton cloth* and not composed wholly or in chief value of yarns, threads, or filaments they are not *fabrics* and articles embroidered within the meaning of paragraph 1430. The fabric of the gloves is composed wholly of yarns, threads, or filaments, and to give to the paragraph the interpretation claimed by the importer would result in an absurdity which we can not attribute to Congress.

The statute unmistakably refers to the basic material of which the embroidered article is composed. The gloves are made of cotton cloth; nevertheless it may be said with entire truth that they are composed of cotton yarns, threads, and filaments. Certainly the yarns, threads, and filaments have been processed by weaving; but as they have not been destroyed to the extent that they are no longer identifiable, at least as filaments, the gloves made of the woven fabric are within the meaning of the paragraph. Embroidery is always imposed on textiles after the textile surface has been woven, and to uphold the importer's contention would result in rendering the embroidery provision of paragraph 1430 inoperative as to all textile embroidered articles ready for ultimate consumption.

The appellant relies on administrative practice to sustain its claim, and points out that under the tariff acts of 1897, 1909, and 1913 merchandise like that imported was classified and subjected to duty either as wearing apparel or as cotton wearing apparel or as cotton gloves.

The act of 1897 contained a provision for cotton wearing apparel, and the acts of 1909 and 1913 contained a provision for cotton gloves. All three acts provided for embroidered articles. The designations "cotton gloves" and "cotton wearing apparel" were clearly more specific than the designation "embroidered articles," which included not only embroidered wearing apparel and embroidered cotton gloves but all other embroidered articles as well. We fail to see how classification under any of the provisions relied upon by counsel to establish an administrative practice is determinative of the classification of the merchandise under consideration. Even if such administrative

practice had been established, it would not at all be decisive of this case, inasmuch as the statute under which that practice obtained has been substantially changed.

The embroidery provision of paragraph 1430 is so sweeping, clear, and definite as to the goods subjected to its operation that there is no room for interpretation and no doubt left as to the goods which Congress meant to include.   That provision subjects to its operation not only fabrics and articles embroidered in any manner, as did the tariff acts of 1897, 1909, and 1913, but prescribes that the duty therein specified shall be imposed on all embroidered fabrics and articles, finished or unfinished, *by whatever name known and to whatever use applied, and whether or not named, described, or provided for elsewhere in the act.*   Every paragraph of the Tariff Act of 1922 must yield to that language, and that means that a duty of 75 per centum ad valorem must be levied on every embroidered commodity composed of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose.

The gloves involved in this appeal are in chief value of yarns, threads, or filaments.   All of the exhibits are embroidered on the back, and two of them have additional embroidery on the wristlets or gauntlets.   Even if paragraph 915 provided in terms for embroidered cotton gloves, no lower or higher duty than that prescribed by paragraph 1430 could be imposed without violating the therein clearly expressed intention of Congress.

In our opinion the goods are embroidered articles within the meaning of paragraph 1430, and the judgment of the board must be *affirmed.*