WESTERN CARTRIDGE CO. (THE UNITED STATES, IMPLEADED) *v.* E. I. DU PONT DE NEMOURS & CO. (INC.), AN AMERICAN MANUFACTURER (No. 3052 [1])

United States Court of Customs Appeals, June 11, 1928

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.
*Thomas J. Doherty* for appellee.

[1] T. D. 42839.

[Oral argument April 13, 1928, by Mr. Place and Mr. Doherty]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

An explosive imported into the United States was classified by the collector of customs at the port of Philadelphia as smokeless powder and held by him to be free of duty under section 201 and paragraph 1585 of the free list, Tariff Act of 1922, the pertinent parts of which read as follows:

SEC. 201. That on and after the day following the passage of this act, * * * the articles mentioned in the following paragraphs, when imported into the United States * * *, shall be exempt from duty:

1585. Gunpowder, sporting powder, and all other explosive substances not specially provided for: * * *

The E. I. du Pont de Nemours & Co. (Inc.), an American manufacturer, protested that the importation was dutiable at 60 per centum ad valorem under paragraph 31 of the Tariff Act of 1922, as an article of which compounds of cellulose, pyroxylin, and all other cellulose esters or ethers were the component materials of chief value. Paragraph 31 reads as follows:

31. Compounds of pyroxylin, of other cellulose esters or ethers, or of cellulose, by whatever name known (except compounds of cellulose known as vulcanized or hard fiber), in blocks, sheets, rods, tubes, or other forms, and not made into finished or partly finished articles, 40 cents per pound; made into finished or partly finished articles, of which any of the foregoing is the component material of chief value, 60 per centum ad valorem: *Provided,* That all such articles (except photographic and moving-picture films), whether or not more specifically provided for elsewhere, shall be dutiable under this paragraph.

The United States Customs Court sustained the protest, Brown, Justice, dissenting, and the importers appealed.

As appears from the record and the evidence in the case the smokeless powder imported is composed of diphenylamin, diethyldiphenylurea, graphite, and about 91.69 per centum nitrocellulose. It is not disputed by the parties that cellulose esters and nitrocellulose are compounds of cellulose and that the component material of chief value of the importation is a compound of cellulose or of cellulose esters.

As the smokeless powder is completely manufactured and ready for the use of the ultimate consumer, it is a finished article, and the question presented for determination is whether it is free of duty under paragraph 1585 as smokeless powder or dutiable at 60 per centum ad valorem under paragraph 31 as a finished article composed in chief value of a compound of cellulose or of cellulose esters. If paragraph 31 had gone no further than to lay a duty of 40 cents per pound on compounds of cellulose, compounds of pyroxylin, and compounds of cellulose esters or ethers, *not made into finished or*

*partly finished articles*, and a duty of 60 per centum ad valorem on such compounds *when made into finished or partly finished* articles, it is evident that none of those designations would be so specific as that for sporting powder in paragraph 1585 of the free list. Tacked onto the paragraph, however, is a proviso by virtue of which every finished or partly finished article made in chief value of said compounds is subjected to the operation of the paragraph, even if the article be more specifically provided for elsewhere in the tariff act. In other words, notwithstanding the fact that the designations in paragraph 31 are more general and less specific than the term "sporting powder" in paragraph 1585, the proviso definitely eliminates relative specificity from consideration and positively requires that all finished or partly finished articles made of compounds of cellulose or of cellulose esters shall be assessed for duty at the ad valorem rate prescribed by paragraph 31.

The importer contends that paragraph 31 is ambiguous and that, therefore, the rules applicable in such a case may be utilized for the purpose of ascertaining its meaning. On that assumption it is argued that the history of the paragraph demonstrates that it was the intention of Congress to limit the paragraph to the class of plastic materials of which celluloid is typical and to articles wholly or partly made of such plastic materials. We see no ambiguity in paragraph 31 which would warrant us in giving to it a meaning other than that conveyed by the language which Congress actually used. Certainly there is no such ambiguity in the provision as would justify the conclusion that it was the legislative intent to restrict the paragraph to plastics of the celluloid type and to exclude therefrom all articles finished or partly finished, not produced from that kind of material.

Pyroxylin may mean in a broad sense any cellulose nitrate and in a narrow sense a cellulose compound which has been nitrated to the extent that it contains $10\frac{1}{2}$ to 12 per centum of nitrogen. It may have been tautological to provide for compounds of cellulose and also for such specific compounds of cellulose as pyroxylin and other cellulose esters, but just how can the designation "compounds of cellulose" and the enumeration by name of particular kinds of such compounds be regarded as ambiguous? Such a designation and enumeration might well be denominated as redundant but certainly not as ambiguous. The words "compounds of pyroxylin" and the phrase "of other cellulose esters" appeared in prototype paragraphs of several tariff acts prior to 1922, and it is quite probable that Congress reenacted that language and used more words than was necessary in order to avoid the legal complications which usually arise when designations long recognized by tariff acts are either dropped or changed. From a literary point of view the law may be defective, but it was not ambiguous or uncertain, inasmuch as it made clear the congressional

intent to impose a duty of 40 cents per pound on all compounds of cellulose and compounds of cellulose esters in blocks, sheets, rods, tubes, or other forms not made into finished or partly finished articles. For the reason that it is established by the evidence and stands undisputed that the merchandise imported is composed in chief value of a compound of cellulose, it is not necessary to decide what is a compound of cellulose, a compound of pyroxylin, or a compound of cellulose esters.

It is said that to make paragraph 31 applicable to all compounds of cellulose and compounds of pyroxylin and of other cellulose esters and ethers would render paragraph 30 of the Tariff Act of 1922 wholly inoperative.

If the plain and unmistakeable language of paragraph 31 warrants the conclusion that paragraph 30 is to be deprived of all operative effect, the courts must accept that as the expressed will of Congress and have no right to judicially amend either paragraph for the purpose of accomplishing a result not disclosed by the plain and unequivocal language which Congress elected to use. Whether any such result as that would follow we must decline to say, inasmuch as the relation of paragraph 30 to paragraph 31 is not involved in the case or necessary to a decision of the legal questions presented by this appeal. However, when the issue is raised as to the relative scope of paragraphs 30 and 31, the fact that the former provides for cellulose esters, collodion, liquid solutions of pyroxylin, etc., and not for compounds of such materials, may prove worthy of consideration.

The contention that sporting powder is not within the terms of the paragraph for the reason that it was not manufactured from blocks, sheets, rods, tubes, or other forms of compounds of cellulose or compounds of cellulose esters can not be sustained. The appellant urges that paragraph 31 is confined to compounds of cellulose which are plastics and that such plastics are not suitable for the manufacture of explosives. The testimony on behalf of the importer discloses that the so-called plastics are made of a particular kind of pyroxylin which is a nitrocellulose or compound of cellulose. The plastics to which the importer refers are given one or other of the forms particularly specified in the statute by dissolving pyroxylin with camphor spirits, thereby forming a collodial or jelly-like mass, which is given the form required for the particular manufacture by forcing it through a stuffing machine. The testimony on behalf of the protestant, an expert in the production of pyroxylin plastics and nitrocellulose smokeless powders, was to the effect that the smokeless powder imported was made from nitrocellulose mixed with a solvent and other materials and extruded from a stuffing press in the form of strands, which were cut into grains. According to the testimony for the importer, the sheet of *plastic* material which come out of

the stuffing machine *is cut into blanks* suitable for the making of combs and brushes. According to the testimony for the protestant the strands of nitrocellulose explosive material which come out of the stuffing press *are cut into grains* of smokeless powder. The evidence, therefore, clearly establishes that the material from which smokeless powder is made is given its primary form in exactly the same way as form is first given to the so-called plastics. Even if smokeless powder were not so manufactured, it is perfectly apparent that the grains of the explosive were either produced directly from a nitrocellulose which had no form or from a nitrocellulose material which had a definite shape.

If the grains of smokeless powder were produced directly from nitrocellulose they were a finished article having a definite form and subject to a duty of 60 per centum ad valorem. If they were produced from blocks, cakes, sheets, rods, tubes, or a mass of nitrocellulose explosive, then they were produced from a compound of cellulose having a definite form or shape. But, however that may be, we are satisfied that the finished or partly finished articles provided for in paragraph 31 are not required by its terms to be made from any special form or shape.

As to the issues involved in this appeal, the language of paragraph 31 is plain, unequivocal, and unmistakable. It is, therefore, not open to interpretation and we can not give it the meaning for which the importer contends without rewriting the paragraph and inserting restrictive language which Congress did not choose to employ. We can not do that and must hold that the protest against the admission of the sporting powder free of duty was properly sustained.

The judgment of the United States Customs Court is *affirmed*.

BLAND, J., dissents.