GOESSLING & FERRE (INC.) *v.* UNITED STATES (No. 3281)[1]

United States Court of Customs and Patent Appeals, April 29, 1930

*Walden & Webster* (*Edward F. Jordan* of counsel) for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles*, special attorney, of counsel), for the United States.

[Oral argument April 18, 1930, by Mr. Jordan and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, · Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

[1] T. D. 44025.

Certain cotton fabric gloves, the cuffs of which have uneven or undulated edges consisting of a series of semicircular curves or projections similar in shape to the shell of the scallop, were assessed for duty by the collector as scalloped articles at 75 per centum ad valorem under paragraph 1430 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 1430. * * * embroideries not specially provided for, and all fabrics and articles embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or tamboured, appliquéd, scalloped, or ornamented with beads, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including straight hemstitching; all the foregoing, finished or unfinished, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose provided for in paragraph 1213, 75 per centum ad valorem.

It is claimed by appellant that the gloves are properly dutiable at $2.50 per dozen pairs under the provision for "Gloves, composed wholly or in chief value of cotton * * *, made of fabric knit on a warp-knitting machine, if single fold of such fabric, * * * shrunk or sueded * * *, and not over eleven inches in length," contained in paragraph 915.

It appears from the record that the edges of the cuffs of the gloves are made uneven or undulated by stamping them with a die known as a "pinking-iron," at the time the gloves are cut from the cotton fabric; and that, in the language of counsel for appellant, "No added stitching of any kind is employed in producing or finishing the *scalloplike edge* nor does any such stitching appear on the gloves as imported." (Italics ours.)

Appellants' witness, Findeisen, said that the edges of the cuffs of the gloves were in the "shape of a scallop."

The witness, McConnell, testifying for appellants, said that the edges simulated or represented the shell of the scallop.

The court below, in an opinion by Tilson, Justice, held that the gloves were properly assessed by the collector as scalloped articles under paragraph 1430, *supra.*

The following stipulation was entered into by counsel for the parties on the trial in this court:

It is hereby stipulated and agreed by and between the Assistant Attorney General, attorney for the United States, appellee herein, and Walden & Webster, attorneys for the appellants herein, that if the Court should hold the gloves, the subject of this appeal, not to be "scalloped" within the purview of paragraph 1430, Tariff Act of 1922, then and in that case the said gloves are provided for in paragraph 915, Act of 1922, as "Gloves, composed wholly or in chief value of cotton * * *, made of fabric knit on a warp-knitting machine, if single fold

of such fabric, * * * shrunk or sueded * * *, and not over eleven inches in length," and dutiable under said provision at $2.50 per dozen pairs.

Dated New York, April 10, 1930.

The position of counsel for appellants is stated in their brief in the following language:

Although the term "scallop" in its broadest signification, as thus defined, might well apply to the uneven edge on the cuff of these gloves, it is the contention of the appellant that, in the light of the legislative and judicial history of the provision, the term "scalloped" as employed by Congress in paragraph 1430, *supra*, taken in connection with the words with which it is associated therein and the general context and purview of the paragraph is limited to that species of scalloping which involves the use of additional stitching on the foundation fabric as a finish, and to some extent a decoration, and is not intended to cover a species produced by a mere cutting of the cloth.

In support of their contention, counsel for appellants have cited several decisions, some by the court below and some by this court, in which it appeared that the *scalloped edges* of the various articles or fabrics involved *were stitched to prevent raveling*. It is argued that it must be presumed that the Congress legislated with knowledge of those decisions, and that, therefore, the term "scalloped" in paragraph 1430, *supra*, was intended to cover only articles or fabrics with stitched scalloped edges.

The words "scalloped" and "scallop" are defined as follows:

scalloped, *pa.* 1. Ornamented around the edge with scallops.

scallop, *n.* 1. A pectinoid bivalve, commonly having a subcircular shell with radiating ribs and an undulating edge. * * * 3. A scallop-shell. * * * 5. *Her.* The representation of a scallop. * * * 7. One of a series of semicircular curves or projections along an edge.

scallop, *vt.* 2. To shape the edge of into lobes or rounded projections, as for ornament.—*Funk & Wagnalls New Standard Dictionary.*

The word "pinking" is defined by the same authority as follows:

pinking, *n.* 1. The act or process of decorating fabrics for dress or upholstery with a pinking-iron, or of punching a scalloped pattern on the margin of any fabric or material.

The word "scalloped" means an ornamental pattern, simulating the shell of the scallop, on the margin of fabrics and articles. There is nothing, either in the dictionary definitions or in the legislative history, to indicate that the statutory term was intended to be limited to articles and fabrics with scalloped edges to which stitches had been added to prevent raveling. Had it ever been held by the courts that the term was so limited, we would be confronted with an entirely different question.

In view of the fact that the gloves are admittedly scalloped within the common meaning of the statutory term, we deem it unnecessary to prolong this discussion. The gloves are scalloped, and are, therefore, more specifically provided for under paragraph 1430 than under

paragraph 915. *Kayser & Co (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T. D. 41367.

We are in accord with the conclusion reached by the court below and its judgment is *affirmed*.