UNITED STATES *v.* FINCHLEY, INC. (No. 4182)[1]

United States Court of Customs and Patent Appeals, June 15, 1939

*Webster J. Oliver*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

*Walden & Webster* (*J. L. Klingaman* of counsel) for appellee.

[Oral argument April 11, 1939, by Mr. Oliver and Mr. Klingaman]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, sustaining the protest of the importer whereby it seeks recovery of certain duties alleged to have been improperly assessed by the Collector of Customs at the port of New York upon merchandise imported during the life of the Tariff Act of 1922.

An official sample of the merchandise is on file as Exhibit 1. It consists of a small size hat of the beret type. Inside its lower portion there is sewed what ordinarily is referred to as a "sweat band" of leather, or imitation leather, and through the back part of the band there is inserted a ribbonlike strip of braid about twelve inches long and one-fourth of an inch wide. From the sample and stipulation of facts of record, it appears that the hats are knitted articles, in chief value of wool, valued at more than two dollars per pound, and that the braid is artificial silk composed in chief value of compounds of cellulose.

The collector's classification was under paragraph 1430 of the Tariff Act of 1922 at a duty rate of 90 per centum ad valorem.

Alternative claims were made in the protest, the one sustained by the trial court and here relied upon being under paragraph 1114 of the 1922 act. For reasons which later will appear, paragraph 31 of the 1922 act also requires consideration.

The pertinent portions of the respective paragraphs involved read:

PAR. 1430. * * * braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace

machine; and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; all the foregoing, finished or unfinished (except materials and articles provided for in paragraphs 920, 1006, 1404, 1406, and 1424 of this Act), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments, * * * or products of cellulose provided for in paragraph 1213 of this Act, 90 per centum ad valorem; * * *.

Par. 1114. * * * Outerwear and other articles, knit or crocheted, finished or unfinished, wholly or in chief value of wool, and not specially provided for, * * * valued at more than $2 per pound, 45 cents per pound and 50 per centum ad valorem.

PAR. 31. Compounds of pyroxylin, of other cellulose esters or ethers, or of cellulose, by whatever name known (except compounds of cellulose known as vulcanized or hard fiber), in blocks, sheets, rods, tubes, or other forms, and not made into finished or partly finished articles, 40 cents per pound; made into finished or partly finished articles, of which any of the foregoing is the component material of chief value, 60 per centum ad valorem: *Provided*, That all such articles (except photographic and moving-picture films), whether or not more specifically provided for elsewhere, shall be dutiable under this paragraph.

The trial court rendered two decisions in this case. With the first we are not here concerned. In the second, upon which the judgment appealed from was based, rendered after rehearing, the protest was sustained. In this second decision the court made reference to its prior decision in the case of *Gross & Gross, Inc., et al.*, which is incorporated in Abstract 37230, 72 Treas. Dec. 955, where merchandise consisting of braids, allovers, and nettings in chief value of compounds of cellulose was held dutiable under paragraph 31, *supra*. It seems to have been stipulated in that case that the merchandise was similar to merchandise involved in the case of *Amberg Schwab & Co. (Inc.) et al. v. United States*, T. D. 46204, 63 Treas. Dec. 368, which the trial court had held classifiable under paragraph 31, *supra*. By stipulation the records in both those cases became a part of the record in the instant case, and the stipulation recites that the—

braid of which the merchandise is composed in part is wholly or in chief value of artificial silk, the same in all material respects as the artificial silk composing the articles the subject of the Gross & Gross case, Abstract 37230.

In its decision in the *Schwab & Co.* case, *supra*, the trial court seems to have relied to a large extent upon the decision of this court in the case of *Birn & Wachenheim v. Du Pont Cellophane Co.*, 17 C. C. P. A. (Customs) 122, T. D. 43454, where it was held that certain transparent sheets of cellulose material used for wrapping tobacco, candy, and other products were dutiable under the provisions of paragraph 31 of the Tariff Act of 1922, rather than under paragraph 42 of the 1922 act by similitude as gelatine sheets.

There seems to have been an appeal by the Government to this court in the *Schwab & Co.* case, *supra*, but the same was dismissed upon

stipulation of counsel without having been heard by us upon the merits. 21 C. C. P. A. (Customs) 617, T. D. 47224, 66 Treas. Dec. 179.

The substance of the contention on behalf of the importer is that articles which have braid as a part thereof do not fall within paragraph 1430, *supra*, unless the braid, if imported separately, would itself be classifiable thereunder; that the artificial silk braid in the hats here involved, being in chief value of compounds of cellulose, would not, if imported separately, be classified under paragraph 1430, *supra*, but under paragraph 31, *supra*, particularly because of the phrase "by whatever name known" coupled with the proviso reading "That all such articles * * * whether or not more specifically provided for elsewhere, shall be dutiable under this paragraph," and hence that the complete article falls within the above-quoted portion of paragraph 1114.

It is conceded by counsel for the Government that the precise issue here presented has not heretofore been before this court. The substance of their contention is that the hats as *articles* fall within the descriptive provision of paragraph 1430, *supra*, because they are articles in part of braid. In other words, as we understand their contention, it is to the effect that there is no occasion here to consider paragraph 31, *supra*. It is said that the braid is composed of yarns, threads, or filaments, and the fact that these are made of compounds of cellulose is immaterial; that braids are not provided for in any of the paragraphs expressly excepted from the "invading" language of paragraph 1430, *supra*, and that, in fact, there is no necessity for applying the doctrine of "invasion," because paragraph 1430, *supra*, specifically describes the articles.

Many perplexing questions have arisen from time to time with respect to the construction of paragraph 1430, *supra*. In an early case this court, after quoting the clause "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act," held that "Every paragraph of the Tariff Act of 1922 [the excepted paragraphs not being there involved] must yield to that language." *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T. D. 41367.

The decision in that case was rendered with respect to articles found to be embroidered, and the matter of braid alone, or of articles in part of braid, was not involved, but the reasoning of that case is equally applicable to braid alone or to articles in part of braid. In other words, the paragraph, by reason of the phrase "all the foregoing," brings braid of the kind therein described within its provisions and it also extends to articles in part of braid.

We are in agreement with the contention on behalf of importer to the effect that the provision for articles in part of braid in para-

graph 1430, *supra*, includes only articles the braid in which would itself, if separately imported, fall within the paragraph. As we view it, the language of the paragraph admits of no other construction and the reasoning of this court in the case of *United States* v. *Macy & Co.,* 7 Ct. Cust. Appls. 8, T. D. 36256 (30 Treas. Dec. 461), which arose under the 1913 tariff act is in point, although the language of the paragraphs there at issue was different from that in the paragraphs which we have here to consider.

So, we are of the opinion that as a preliminary question it must be determined where the braid portion of the involved merchandise would be classifiable if separately imported, and upon the record here we need only consider paragraph 31, *supra*, and paragraph 1430, *supra*, in that regard.

The principal authority relied upon by counsel for the importer is the decision of this court in the case of *Western Cartridge Co.* v. *E. I. Du Pont De Nemours & Co.*, 16 Ct. Cust. Appls. 229, T. D. 42839, where we had occasion to construe paragraph 31, *supra*, and make application of the proviso.

The merchandise there involved was a smokeless sporting powder provided for *eo nomine* as duty free under paragraph 1585 of the Tariff Act of 1922. It was so classified by the collector. The appellee, an American manufacturer, proceeding under section 516 of the act, protested. We affirmed the trial court's judgment sustaining the protest, saying *inter alia:*

If paragraph 31 had gone no further than to lay a duty of 40 cents per pound on compounds of cellulose, compounds of pyroxylin, and compounds of cellulose esters or ethers, *not made into finished or partly finished articles*, and a duty of 60 per centum ad valorem on such compounds *when made into finished or partly finished* articles, it is evident that none of those designations would be so specific as that for sporting powder in paragraph 1585 of the free list. Tacked onto the paragraph, however, is a proviso by virtue of which every finished or partly finished article made in chief value of said compounds is subjected to the operation of the paragraph, even if the article be more specifically provided for elsewhere in the tariff act. In other words, notwithstanding the fact that the designations in paragraph 31 are more general and less specific than the term "sporting powder" in paragraph 1585, the proviso definitely eliminates relative specificity from consideration and positively requires that all finished or partly finished articles made of compounds of cellulose or of cellulose esters shall be assessed for duty at the ad valorem rate prescribed by paragraph 31.

The importer contends that paragraph 31 is ambiguous and that, therefore, the rules applicable in such a case may be utilized for the purpose of ascertaining its meaning. On that assumption it is argued that the history of the paragraph demonstrates that it was the intention of Congress to limit the paragraph to the class of plastic materials of which celluloid is typical and to articles wholly or partly made of such plastic materials. We see no ambiguity in paragraph 31 which would warrant us in giving to it a meaning other than that conveyed by the language which Congress actually used. Certainly there is no such ambiguity in the provision as would justify the conclusion that it was the legislative

intent to restrict the paragraph to plastics of the celluloid type and to exclude therefrom all articles finished or partly finished, not produced from that kind of material.

It is argued by counsel for importer that the instant case is indistinguishable in principle from the *Western Cartridge Co.* case, *supra;* that the smokeless powder there involved had *eo nomine* designation in paragraph 1585, just as braid has *eo nomine* designation in paragraph 1430, *supra,* but nevertheless the powder was held dutiable under paragraph 31, *supra;* that relative specificity is not the rule of classification here, and that the hats in question naturally fall within the provisions of paragraph 1114, *supra.*

It seems to us that this argument fails to take into account the distinction between paragraph 1585 and paragraph 1430, *supra.* Paragraph 1585 embraced gunpowder, sporting powder, and all other explosive substances "not specially provided for." It contained no language of an "invading" character. Paragraph 1430, *supra,* embraces braids *eo nomine* and it not only lacks a "not specially provided for" provision relative to such braids but contains the sweeping affirmative provision already quoted which, in the *Kayser & Co.* case, *supra,* was held to invade all other nonexcepted paragraphs of the act.

Paragraph 1430, *supra,* contains no language defining the inherent nature of the materials composing the yarns, threads or filaments entering into the braids therein provided for. That braids composed of yarns, threads or filaments of cotton, wool or silk are covered by the paragraph is conceded, and, in the absence of any limitation as to the nature of the material, it seems quite clear to us that braids composed of yarns, threads or filaments of artificial silk also fall within the descriptive language of the paragraph. So, if the braid here at issue had been separately imported, the descriptive language of the paragraph would cover it.

We are of the opinion also that the descriptive language of paragraph 31, *supra,* covers the merchandise, and we do not overlook the fact that paragraph 31, *supra,* contains a sweeping provision of an invading character. It provides for compounds of cellulose "by whatever name known" and for articles made therefrom "whether or not more specifically provided for elsewhere."

So, a situation is here presented in which there is a conflict with respect to braid of the character here involved. If imported separately it would be classifiable under paragraph 1430, *supra,* in the absence of paragraph 31, *supra,* and *vice versa.* With both paragraphs in existence the conflict exists under the facts here appearing.

The here pertinent portions of both paragraphs appeared for the first time in the Tariff Act of 1922. We have examined the legislative history of each and find nothing therein which aids us in construing them.

64

Under such circumstances, therefore, it is felt that the issue must be determined under the provision of paragraph 1460 of the 1922 act, reading:

If two or more rates of duty shall be applicable to any imported article, it shall pay duty at the highest of such rates.

Under that provision the braid, if imported separately, would, in our opinion, be classifiable under paragraph 1430, *supra*. It logically follows that the hats being in part of such braid are, by reason of the "invading" language of paragraph 1430, *supra*, brought within its terms.

The judgment of the United States Customs Court is therefore *reversed*.