(C.D. 3855)

COSTA INTERNATIONAL CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 25, 1969)

*Brooks & Brooks* (*Gail T. Cumins* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Herbert P. Larsen*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: By this action, plaintiff seeks to recover a portion of the customs duty assessed on certain articles which it contends are parts of a unit known as the Madeleine System. The merchandise was assessed with duty at the rate of 12½ per centum ad valorem under item 661.70 of the Tariff Schedules of the United States as parts of industrial machinery for the treatment of materials by a process involving a change of temperature.

The merchandise, plaintiff contends, is not a machine *per se*, but is actually part of the drying section of a fourdrinier paper machine. By virtue of this use, the rate of 7 per centum ad valorem prescribed by item 668.06 of the Tariff Schedules of the United States is claimed to be the proper rate of duty applicable to the imported material.

The pertinent portions of the statutory provisions involved read as follows:

> Schedule 6, part 4:
>
> Subpart A.—Boilers, Non-Electric Motors and Engines, and Other General Purpose Machinery
>
> *Subpart A headnote:*
>
> 1. A machine or applicance which is described in this subpart and also is described

elsewhere in this part is classifiable in this subpart.

\*     \*     \*     \*     \*     \*     \*

Industrial machinery, plant, and similar laboratory equipment,whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing, or cooling; instantaneous or storage water heaters, non-electrical; all the foregoing (except agricultural implements, sugar machinery, and machinery or equipment for the heat-treatment of textile yarns, fabrics, or made-up textile articles) and parts thereof:

\*     \*     \*     \*     \*     \*     \*

661.70     Other _____ 12.5% ad val.

Subpart D.—Pulp and Paper Machinery; Bookbinding Machinery; Printing Machinery

Machines for making cellulose pulp, paper, or paperboard; machines for processing or finishing pulp, paper, or paperboard, or making them up into articles:

668.00     Machines for making cellulosic pulp, paper, or paperboard_____ 7% ad val.

\*     \*     \*     \*     \*     \*     \*

Parts of the foregoing machines:

\*     \*     \*     \*     \*     \*     \*

Other:

668.06        Parts of machines for making cellulosic pulp, paper, or paperboard___ 7% ad val.

The record herein consists of the testimony of three witnesses called on behalf of plaintiff and ten exhibits, seven on behalf of plaintiff and three on behalf of defendant. We do not deem it necessary to set forth in detail the functioning of the machine as described by the well qualified witness. It is sufficient to state that the imported article is custom designed, dedicated and exclusively used in the drier section of a fourdrinier type paper making machine. It is also abundantly clear that the imported material in particular, and the drier section in general, do treat materials by subjecting them to a change in temperature. In this instance the material being treated is the drier felt and the paper web or sheet.

With these facts in mind, we feel that our recent decision in the case of *American S.F. Products, Inc.* v. *United States*, 61 Cust. Ct. 257, C.D. 3593 (1968), is controlling. In the *American S.F.* case, *supra*,

the court had before it for consideration the proper classification of a so-called Flakt Dryer which was used to dry the pulp web by means of heat. In arriving at our conclusion that the classification was correct, we made the following observations:

> Under the Tariff Act of 1930, as modified, it has been held that no one machine makes paper pulp and that machines used in the process thereof (unless essentially electrical) are classifiable under paragraph 372, as modified, as machines for making paper or paper pulp. *Bird Machine Company* v. *United States*, 51 CCPA 42, C.A.D. 835; *Superwood Corporation* v. *United States*, 52 Cust. Ct. 92, C.D. 2443, affirmed *sub nom. United States* v. *Superwood Corporation*, 52 CCPA 57, C.A.D. 858; *Arthur J. Fritz & Co.* v. *United States*, 46 Cust. Ct. 215, C.D. 2258. In the case last cited the merchandise consisted of pulp drying equipment which apparently performed a function the same as or similar to that of the Flakt Dryer. The court stated (p. 221):

>> The evidence herein establishes that the imported machine in its operative condition, takes a pulp sheet or web, which has already been through a mechanical process to remove water, and, by means of thermal drying, removes water from the pulp sheet. The witness, Mr. Ahlen, testified that, prior to entering the involved drier, the pulp sheet may contain as much as 60 per centum water and, when it leaves the machine, after traversing its length nine times, may contain as little as 10 per centum water. The record also establishes that the final product from this machine is merely slit into sheets and baled as a completed product.

>> We are of the opinion that since all of the operations performed by the machine were prior to the completion of the manufacture of the pulpboard produced, the involved machine falls within the purview of paragraph 372 of the Tariff Act of 1930, as modified, *supra*, as machines for making paper or paper pulp, as claimed by plaintiff herein, since "pulpboard" is described in the Dictionary of Tariff Information (1924), as "paper" nine one-thousandths of an inch in thickness. * * *

The language of item 668.00 is similar to that in the portion of paragraph 372 of the Tariff Act of 1930, as modified, which provides for "machines for making paper or paper-pulp" and was derived in part therefrom. Tariff Classification Study, November 15, 1960, schedule 6, pages 266–267. It follows that the Flakt Dryer involved herein is a machine for making cellulosic pulp, paper, or paperboard within the meaning of item 668.00.

It also falls within the description in the superior heading to item 661.70 covering industrial machinery, plant, and similar laboratory equipment, for the treatment of materials by a process involving a change in temperature, such as heating, drying, evaporating, etc.

Plaintiff claims, however, that the Flakt Dryer does more than treat the pulp web by a temperature change process and that

item 661.71 was not intended to cover machines, such as the Flakt Dryer, which manufacture materials into finished products. It quotes from the Tariff Classification Study, schedule 6, page 263, as follows:

> * * * Item 661.70 covers industrial and laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change in temperature. This equipment is designed to submit materials to a heating or cooling process in order to cause the simple change of temperature, or to cause the transformation of materials resulting principally from the temperature change. The item does not cover equipment in which the heating or cooling, even if essential, is merely a secondary function designed to facilitate the main function. * * *

It is clear from the record that the heating done by the Flakt Dryer is not merely a secondary function designed to facilitate some other function, but that heating, drying, and evaporating are the principal, if not the only, functions of the machine. Whatever the Flakt Dryer does, it does by means of heating and drying the pulp web and evaporating the water from it.

By virtue of the foregoing, we then considered the effect of the headnote in subpart A and made the following statements:

> In view of the fact that the Flakt Dryer is described by both item 661.70, which is in subpart A of part 4 of schedule 6, and item 668.00, which is in subpart D of said part and schedule, the headnote to subpart A comes into play. It provides:

> > 1. A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart.

We have recently had occasion to consider the effect of this headnote. *Amalgamated Sugar Company* v. *United States*, 60 Cust. Ct. 268, C.D. 3361. The merchandise in that case consisted of a rotary displacement magma pump and parts which were covered by item 660.90, which provided for pumps for liquids, and item 666.20, which provided for machinery for use in the manufacture of sugar. Since the former was in subpart A and the latter in subpart C, it was held that the pumps were classifiable under the former. The court discussed the legislative history of the headnote and concluded:

> The effect of the TSUS headnotes quoted above as applied to this case is that the subject importations are classifiable as pumps for liquids and parts thereof even if they were specially designed and chiefly used as machinery for the manufacture of sugar. * * *

> The conclusion expressed in the preceding paragraph should not be construed as an application of the rule of relative specificity. Rather, the effect of the cited headnote to subpart A may be compared to the effect of phrases, contained in earlier tariff statutes, such as:

"whether or not more specifically provided for elsewhere"; "by whatever name known"; or "whether or not provided for elsewhere." See e.g. *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T.D. 41367; *Western Cartridge Co., etc.* v. *E. I. duPont de Nemours & Co. (Inc.)*, etc., 16 Ct. Cust. Appls. 229, T.D. 42839; *Madame Adele* v. *United States*, 23 Ct. Cust. Appls. 305, T.D. 48176; *Richard Crittall Radiant Heating Corp.* v. *United States*, 27 Cust. Ct. 193, C.D. 1369; *Swiss Manufacturers Association, Inc., et al.* v. *United States*, 39 Cust. Ct. 227, C.D. 1933. For, if an article is described in a subpart A tariff description, the headnote to subpart A eliminates relative specificity from consideration and requires that the article be assessed as there provided.

The headnote contains language of an "invading character", similar to the quoted phrases, indicating a congressional intent to give precedence in classification to an article described in subpart A. Accordingly, subpart A invades every other subpart of part 4 and removes therefrom articles described therein which also are described in subpart A. The subpart A headnote may be compared with the proviso to paragraph 1504 of the 1922 Act and paragraph 1604 of the 1930 Act which limited the inclusiveness of those paragraphs to articles not specified by name in the dutiable list. When a particular importation was so specified by name, it was not classifiable as an agricultural implement nor as sugar machinery even if exclusively used and specially designed for such restricted purposes. *United States* v. *Sheepshearers Mdse. & Comm. Co.*, 20 Ct. Cust. Appls. 327, T.D. 46112; *United States* v. *J. A. Freeman & Son*, 29 CCPA 103, C.A.D. 177; *Enrique Abarca and U. Casal et al.* v. *United States*, 18 Ct. Cust. Appls. 370, T.D. 44617.

The effect of the headnote to subpart A in the instant case is to cause the subpart A item, 661.70, to invade the subpart D item, 668.00, and remove therefrom the articles described therein which are also described in item 661.70. Thus, the merchandise involved herein must be classified under item 661.70, as industrial machinery and equipment for the treatment of materials by a process involving a change of temperature, even though it is also described in item 668.06, as parts of machines for making cellulosic pulp, paper, or paperboard.

Plaintiff herein contends there is a distinction between the case at bar and the *American S.F.* case, *supra*, since it is here contended that the imported merchandise is not a machine or appliance as set forth in the headnote, *supra*, but consists of parts which are not covered by said headnote. Plaintiff also contends the Tariff Classification Study, schedule 6, part 4, subpart A, indicates said subpart covers general purpose machines. Since the imported merchandise is specifically designed and used for paper making, plaintiff contends

it was not the intent to include such articles therein. We note with interest some of the exceptions set forth in the superior heading covering the classification provision, to wit, sugar machinery and shoe machinery. These two categories of machines are not general purpose machines. We are, therefore, of the opinion that if the intent was as claimed by plaintiff herein, Congress could readily have excepted paper machinery in addition to the aforementioned articles.

Insofar as the contention of plaintiff that the headnote of subpart A, *supra*, covers only machines and appliances and not parts, we are in total agreement. As indicated, *supra*, this court and the Court of Customs and Patent Appeals have held that no one machine makes paper. An examination of plaintiff's exhibit 2 and the diagram con-. tained on page 2 of defendant's exhibit A makes it abundantly clear to us that the so-called Madeleine System is one of the machines utilized to make paper. It is admittedly a part of the dryer section of paper machinery, not in the sense of the term "part of a machine", but part of the section, to wit, one of the machines of the dryer portion of paper making. Even if we were not to consider the Madeleine System a machine, it actually falls within the common meaning of the term "appliance" which has among other meanings, equipment, accouterments, appurtenances, implements, devices, etc.

We are, therefore, of the opinion for the reasons set forth and following the rationale of the *American S.F.* case that the imported merchandise is properly subject to classification under item 661.70 as classified.

In view of our conclusion, it is not necessary for us to reach the question of whether the protest should be limited to the Madeleine rolls or include the other equipment covered by the invoice. The protest is accordingly overruled.

Judgment will be entered accordingly.