(C.D. 4198)

JAGENBERG U.S.A., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 7, 1971)

*Sharretts, Paley, Carter & Blauvelt* (*Thomas J. McKenna* of counsel) for the plaintiff.

*L. Patrick Gray, III,* Assistant Attorney General (*Robert Blanc,* trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: This action brings before the court for determination the proper classification of an article described on the invoice as a "Drying Tunnel * * *." It was classified by the district director at the port of Philadelphia, Pennsylvania, under the provisions of item 661.70, Tariff Schedules of the United States, as industrial machinery, and parts thereof, for the treatment of material by a process involving temperature change. Duty was assessed thereon at the rate of 12.5 per centum ad valorem.

Plaintiff contends the involved machine is properly subject to classification under item 668.007, Tariff Schedules of the United States, as parts of machines for processing or finishing paper and as such subject to duty at the rate of 10 per centum ad valorem. This position is based upon the contention that the utilization of the temperature change is a secondary function, the primary function being the coating of the paper to make it resistant to water, vapor, grease, odor and moisture.

The pertinent statutory provisions involved herein provide as follows:

Schedule 6, part 4:

SUBPART A.—BOILERS, NON-ELECTRIC MOTORS AND ENGINES, AND OTHER GENERAL PURPOSE MACHINERY

Subpart A headnote:
1. A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart.

\*        \*        \*        \*        \*        \*        \*

Industrial machinery, plant, and similar laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing, or cooling; instantaneous or storage water heaters, non-electrical; all the foregoing (except agricultural implements, sugar machinery, and machinery or equipment for the heat-treatment of textile yarns, fabrics, or made-up textile articles) and parts thereof:

\*        \*        \*        \*        \*        \*        \*
661.70        Other _____ 12.5% ad. val.
\*        \*        \*        \*        \*        \*        \*

SUBPART D. – PULP AND PAPER MACHINERY; BOOKBINDING MACHINERY; PRINTING MACHINERY

Machines for making cellulosic pulp, paper, or paperboard; machines for processing or finishing pulp, paper, or paperboard, or making them up into articles:

\*        \*        \*        \*        \*        \*        \*
668.07        Other _____ 10% ad val.

The record consists of the testimony of one witness called on behalf of plaintiff and two documentary exhibits received in evidence as plaintiff's exhibits 1 and 2. The oral testimony consisted of a description of the operation of the coating unit and the drying tunnel. The purpose of the tunnel is to evaporate the moisture which is introduced into the paper by the coating. The tunnel does not coat the paper which is applied by the coating unit. The coating of the paper is to make it resistant to water, vapor, grease, odor and moisture. The moisture is removed in order to enable the coating to dry. This could also be done by letting the coated paper stand to dry. The heat speeds up the drying process.

Counsel for the respective parties stipulated that the drying tunnel dries the paper by a process involving a change of temperature. The witness also testified that the drying tunnel was essential to the operation of the coating machine.

While admitting the importation at bar, a drying tunnel functions in the manner described in the superior heading to item 661.70, Tariff Schedules of the United States, plaintiff contends it was not intended to be covered thereby because of the following language contained in the Tariff Classification Study, Schedule 6, page 263 :

> * * * Item 661.70 covers industrial and laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change in temperature. This equipment is designed to submit materials to a heating or cooling process in order to cause the simple change of temperature, or to cause the transformation of materials resulting principally from the temperature change. The item does not cover equipment in which the heating or cooling, even if essential, is merely a secondary function designed to facilitate the main function. * * *

It is the last sentence, *supra*, which plaintiff contends is the controlling factor in this case. Plaintiff takes the position that the drying tunnel is a part of the coating machine and the primary purpose of said machine is to coat the paper while the drying of the paper is merely a secondary function and hence is excluded from the language of the superior heading for item 661.70, Tariff Schedules of the United States. Plaintiff therefore contends that since this drying tunnel is part of the coating machine which is a machine for processing or finishing paper, it is more properly subject to classification under item 668.07, Tariff Schedules of the United States, as claimed.

It is evident from the record that while the drying tunnel is a part of the coating machine and in that sense may be considered secondary, the prime and sole function of the tunnel is the heating, drying and evaporation of the coating applied by the coating machine. Accordingly, this merchandise falls clearly within the purview of item 661.70, *supra*, as the main function of the drying tunnel is for the treatment of

materials by a process involving temperature change. The mere fact that it is used as an adjunct to the coating machine does not relegate the drying to that of a secondary function within the above quoted legislative history. The legislative intent is clear that the heating in the particular machine must be secondary in order to be excluded from item 661.70, *supra*, and not the machine itself being secondary to another machine.

The record in our opinion amply establishes the drying tunnel to be an essential part of the coating machine which is clearly one that processes paper within the purview of item 668.07, *supra*. Plaintiff contends, therefore, that the imported merchandise is a part of paper processing machines. Since, as indicated, *supra*, the imported machine is also one which treats material by a process involving a change of temperature, it is also provided for in item 661.70, *supra*, which is contained in subpart A of part 4 of schedule 6. Subpart A, part 4, of schedule 6, contains the following headnote:

> 1. A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart.

This headnote has been the subject of interpretation in a number of recent decisions. *Costa International Corp.* v. *United States*, 58 CCPA 48, C.A.D. 1003 (1970); *American SF Products, Inc.* v. *United States*, 61 Cust. Ct. 257, C.D. 3593, 291 F. Supp. 685 (1968); *Amalgamated Sugar Company* v. *United States*, 60 Cust. Ct. 268, C.D. 3361, 281 F. Supp. 373 (1968).

In the *Costa* case, *supra*, the Court of Customs and Patent Appeals following the reasoning in the *American SF Products* case, *supra*, so far as is pertinent herein, held the invasionary language of headnote 1 of subpart A, part 4, schedule 6, precluded classification under item 668.07.

In the *American SF Products* case, *supra*, we made the following observations which are applicable to the merchandise at bar:

> Under the tariff Act of 1930, as modified, it has been held that no one machine makes paper pulp and that machines used in the process thereof (unless essentially electrical) are classifiable under paragraph 372, as modified, as machines for making paper or paper pulp. *Bird Machine Company* v. *United States*, 51 CCPA 42, C.A.D. 835; *Superwood Corporation* v. *United States*, 52 Cust. Ct. 92, C.D. 2443, affirmed *sub nom. United States* v. *Superwood Corporation*, 52 CCPA 57, C.A.D. 858; *Arthur J. Fritz & Co.* v. *United States*, 46 Cust. Ct. 215, C.D. 2258.
>
> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
>
> We have recently had occasion to consider the effect of this headnote. *Amalgamated Sugar Company* v. *United States*, 60 Cust. Ct. 268, C.D. 3361. The merchandise in that case consisted

of a rotary displacement magma pump and parts which were covered by item 660.90, which provided for pumps for liquids, and item 666.20, which provided for machinery for use in the manufacture of sugar. Since the former was in subpart A and the latter in subpart C, it was held that the pumps were classifiable under the former. The court discussed the legislative history of the headnote and concluded:

> The effect of the TSUS headnotes quoted above as applied to this case is that the subject importations are classifiable as pumps for liquids and parts thereof even if they were specially designed and chiefly used as machinery for the manufacture of sugar. * * *

The conclusion expressed in the preceding paragraph should not be construed as an application of the rule of relative specificity. Rather, the effect of the cited headnote to subpart A may be compared to the effect of phrases, contained in earlier tariff statutes, such as: "whether or not more specifically provided for elsewhere"; "by whatever name known"; or "whether or not provided for elsewhere." See e.g. *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T.D. 41367; *Western Cartridge Co., etc.* v. *E. I. du Pont de Nemours & Co. (Inc.), etc.*, 16 Ct. Cust. Appls. 229, T.D. 42839; *Madame Adele* v. *United States*, 23 Ct. Cust. Appls. 305, T.D. 48176; *Richard Crittall Radiant Heating Corp.* v. *United States*, 27 Cust. Ct. 193, C.D. 1369; *Swiss Manufacturers Association, Inc., et al,* v. *United States*, 39 Cust. Ct. 227, C.D. 1933. For, if an article is described in a subpart A tariff description, the headnote to subpart A eliminates relative specificity from consideration and requires that the article be assessed as there provided.

The headnote contains language of an "invading character", similar to the quoted phrases, indicating a congressional intent to give precedence in classification to an article described in subpart A. Accordingly, subpart A invades every other subpart of part 4 and removes therefrom articles described therein which also are described in subpart A. The subpart A headnote may be compared with the proviso to paragraph 1504 of the 1922 Act and paragraph 1604 of the 1930 Act which limited the inclusiveness of those paragraphs to articles not specified by name in the dutiable list. When a particular importation was so specified by name, it was not classifiable as an agricultural implement nor as sugar machinery even if exclusively used and specially designed for such restricted purposes. *United States* v. *Sheepshearers Mdse. & Comm. Co.*, 20 Ct. Cust. Appls. 327, T.D. 46112; *United States* v. *J. A. Freeman & Son*, 29 CCPA 103, C.A.D. 177; *Enrique Abarca and U. Casal et al.* v. *United States*, 18 Ct. Cust. Appls. 370, T.D. 44617.

The effect of the headnote to subpart A in the instant case is to cause the subpart A item, 661.70, to invade the subpart D item, 668.00, and remove therefrom the articles described therein which are also described in item 661.70. Thus, the merchandise involved herein must be classified under item 661.70, as industrial machinery and equipment for the treatment of materials by a process

involving a change of temperature, even though it is also described in item 668.06, as parts of machines for making cellulosic pulp, paper, or paperboard.

By the same token the foregoing reasoning is likewise applicable to item 668.07 as it is to item 668.06.

For the reasons stated, the protest is overruled. Judgment will be entered accordingly.